UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHMAD FAREEZ THABATEH,

    Petitioner,

v.

MAT KING, et al.,

    Respondents.

Case No. 25-cv-14018

Honorable Robert J. White

---

## OPINION AND ORDER GRANTING HABEAS PETITION

---

Petitioner Ahmad Fareez Thabateh filed his amended petition for a writ of habeas corpus on December 19, 2025, when he was detained at the St. Clair County Jail. (ECF No. 4).  Thabateh has lived in the United States for over 30 years, since his arrival in 1995 on a student visa.  His lone criminal conviction, for which he successfully completed probation, is from 2000.  The long history of Thabateh's immigration case concluded after exhausting his administrative remedies with a final order of removal on May 26, 2023.  (ECF No.1, PageID.3). Throughout the pendency of the immigration litigation, which spanned decades, he maintained an otherwise law-abiding life and attended regularly scheduled check-in appointments with immigration authorities.

Thabateh was detained while attending a scheduled check-in appointment on June 10, 2025.  He alleges that Respondent and immigration officials have detained him indefinitely in violation of the Immigration and Nationality Act (INA), and that his continued detention violates his Fifth and Fourteenth Amendment right to Due Process. (ECF No. 4, PageID.69-70).  Thabateh asserts that his petition must be granted because (1) his detention pursuant to a final removal order has exceeded 180 days and (2) it is not significantly likely he will be removed in the reasonably foreseeable future. (ECF No. 4, PageID.60).

Respondent answered the amended petition on January 13, 2026. (ECF No. 9).  The parties in February 2026 provided supplemental materials to update the Court regarding the status of Thabateh's removal. (ECF Nos. 18-19).  The Court held oral argument on February 26, 2026.  On March 9, 2026, the Court ordered Respondent to file a status report within 45 days providing another update on Thabateh's removal. (ECF No. 20).  For the following reasons, the Court grants the habeas petition.

## I.    Background

Thabateh was born in the West Bank and is a citizen of Israel.[1] (ECF No. 4, PageID.59, 63).  On March 30, 2018, an immigration judge denied Thabateh's

---

[1] Despite Thabateh's Israeli nationality, it is undisputed that he does not currently have a valid Israeli passport.

application for a waiver under the INA and ordered for his removal. (ECF No. 4-4). Thabateh's appeal was denied and his removal order became final on May 26, 2023. (ECF Nos. 4-5 – 4-6).  Thabateh was initially released on supervision around August 2023. (*See* ECF No. 4-6; ECF No. 4, PageID.64, ECF No. 9, PageID.129). According to Respondent, a flight was scheduled in September 2023 to remove Thabateh to the West Bank, but the flight was ultimately cancelled due conflicts in the middle east. (ECF No. 9, PageID.129; *see also* ECF No. 9-1, PageID.140). Respondent further asserts that immigration officials arrested Thabateh on June 10, 2025, "to execute his final order of removal." (ECF No. 9, PageID.129; *see also* ECF No. 9-1, PageID.140).  Thabateh filed this action once his detention extended past six months.

## II.    Legal Standard

"The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).  "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Id.* (quoting 8 U.S.C. § 1231(a)(1)(A)).  "[T]he Government 'shall' detain noncitizens during the statutory removal period." *Id.* (quoting 8 U.S.C. § 1231(a)(2).

Detention to effectuate removal is presumptively reasonable over an initial six-month period (i.e., for another 90 days beyond the statutory removal period). *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020).  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  But the six-month presumption "does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Further, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

## III.   Analysis

Thabateh claims it is not significantly likely he will be removed in the reasonably foreseeable future in large part because immigration officials have been unable over more than six months to obtain the necessary travel documents to effectuate his removal. (*See* ECF No. 4).  Respondent initially countered that the record of this case shows removal is likely in the reasonably foreseeable future because a request for travel documents remained pending and could be issued soon, Thabateh would have been removed in 2023 but for events out of officials' control,

and officials may be able to remove Thabateh to Israel via charter flight even if they cannot secure the requested travel documents. (*See* ECF No. 9).

In support, Respondent provided the signed declaration of Anthony Suriano, a Deportation Officer the Detroit Field Office for U.S. Immigration and Customs Enforcement (ICE). (ECF No. 9-9).  Under the penalty of perjury, Suriano stated in relevant part:

> 21. On September 1, 2023, ICE ERO [Enforcement and Removal Operations] Headquarters Removals and International Operations (HQRIO) notified ERO Detroit that THABATEH was manifested for an upcoming Special High-Risk Charter (SHRC) removal to Israel/West Bank/Gaza.
>
> 22. On October 13, 2023, HQRIO notified ERO Detroit that due to the war between Israel and Hamas, the SHRC charter had been cancelled and would be rescheduled for a later date.
>
> 23. On June 10, 2025, ICE ERO Detroit arrested THABATEH to execute THABATEH's final order of removal.
>
> (. . .)
>
> 25. On September 9, 2025, ICE ERO Detroit conducted a post-order custody review and served THABATEH a Decision to Continue Detention.  ICE ERO determined that it expects to receive the necessary travel documents to effectuate THABATEH's removal and that removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest.

(ECF No. 9-9, PageID.140-41).  ERO Detroit has since submitted a memorandum for review at headquarters recommending that Thabateh remain in ICE custody as

5

efforts to execute his removal remain ongoing. (*Id.*).   A decision from ERO headquarters is still pending. (*Id.*).

Respondent later argued, on January 16, 2026, that ICE had recently transferred Thabateh to Louisiana in order "to stage his removal, which is currently scheduled to occur within the next fourteen days [i.e., by January 30, 2026]." (ECF No. 12, PageID.165; *see also* ECF No 13, PageID.178).

Thabateh, however, remains in custody.  On February 12, 2026, to update the Court, Officer Suriano supplemented his earlier declaration as follows:

> 4. On January 13, 2026, Immigration and Customs Enforcement, Enforcement and Removals Operations (ICE/ERO) Detroit transported THABATEH from the St. Clair County Jail in Port Huron, Michigan to Alexandria, Louisiana to be staged for an international charter flight to Tel Aviv, Israel[.]

>     *    *    *

> 7. On February 1, 2026, immigration officials working with ICE Air Operations pulled THABATEH from the international charter flight to Israel stating THABATEH did not have the proper travel documents required to return to his country.

> 8. On February 3, 2026, ICE ERO Headquarters Removals and International Operations (HQ RIO) advised that THABATEH was supposed to have his required travel documents delivered to the flight line in time for the charter, but the required documents were not delivered.

> 9. On February 11, 2026, HQ RIO advised that THABATEH now has all his proper travel documents required to return to Israel with the next international charter tentatively scheduled for as early as March 2026.

6

(ECF No. 18-1, PageID.201-02).

Thabateh's supplemental briefing, in contrast, argues that the recent developments in this case clearly demonstrate that his removal is not likely in the reasonably foreseeable future. (ECF No. 19, PageID.203-07).  According to Thabateh, Suriano's declaration critically lacks any indication that Israel will accept him, with Israel's apparent failure or refusal to do so in early February 2026 creating substantial doubt that removal can be achieved with the next charter flight, if at all. Thabateh elaborates that no specific travel document(s) supporting his removal to Israel has been provided, and that Suriano's vague guess at removal occurring as early as March 2026 leaves open the door for elongated detention well into the future.

In support, Thabateh provides the declaration of his wife, which states in relevant part that (1) in mid-January 2026, during an unsuccessful attempt in Arizona to remove Thabateh via charter flight, immigration officials ultimately told him "they did not have a seat for him on that flight"; and (2) with respect to the February 1, 2026 flight, immigration officials took Thabateh off the plane before departure and told him this was "'because Israel is not accepting you.'" (ECF No. 19-1, PageID.210).

Following oral argument, the Court, due to ongoing and escalated conflict in the Middle East, ordered Respondent to provide an update within 45 days stating

"(1) whether Thabateh has been removed from the United States, and if so, (2) to what country has he been removed.  In the event Thabateh has not been removed from the United States, the status report must (3) address ICE's efforts to remove Thabateh over the 45-day interim period." (ECF No. 20, PageID.212-13). Respondent's April 23, 2026 status report states that "Respondent has obtained a travel document for petitioner, but they have not been able to schedule a flight to remove petitioner due to ongoing turmoil in the region of his removal. (See Suriano Decl., ECF No. 18-1, PageID.202).  Petitioner will be removed once it is safe to do so." (ECF No. 21, PageID.214).

As an initial matter, the Court acknowledges that prolonged delays of removal, particularly when accompanied by prior failed efforts at removal and a lack of approval from the receiving country, have supported habeas relief in other cases. *See Tarkhorani v. Unknown Party #1*, No. 26-231, 2026 U.S. Dist. LEXIS 29525, at *6-7 (W.D. Mich. Feb. 12, 2026) (finding good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future where (1) "ICE first attempted to remove Petitioner to Iran in 2005 but was unsuccessful"; (2) "ICE has now detained Petitioner for a second time in an effort to execute . . . removal"; and (3) "ICE has been told only that its request for Iranian travel documents is 'pending'"); *see also Masheli v. Noem*, No. 25-1577, 2026 U.S. Dist. LEXIS 12007, at *9 (W.D. Mich. Jan. 22, 2026) ("The Court concludes that the fact that the

government has been unsuccessfully attempting to remove Petitioner to Iran since 2007 provides a good reason to believe that there is a significant likelihood that Petitioner will not be removed in the reasonably foreseeable future.") (quotation marks and citation omitted); *Kai Yu v. Noem*, No. 26-263, 2026 U.S. Dist. LEXIS 26419, at *6-7 (W.D. Mich. Feb. 9, 2026) ("The Court concludes that the fact that the government was recently unable to provide a travel document to effect removal on a special charter flight and that the government has not received the required documentation from China despite at least two requests for such documentation provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (quotation marks and citation omitted); *Perez v. Noem*, No. 25-00429, 2025 U.S. Dist. LEXIS 249980, *3 (M.D. Fl. Dec. 4, 2025) ("Godinez Perez alleges ICE has taken no action to remove him since June 5, 2025, when Guatemala declined to accept him.  The Court finds ICE's lack of progress sufficient to carry Godinez Perez's initial burden to provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (quotation marks and citation omitted); *Abuelhawa v. Noem*, No. 25-04128, 2025 U.S. Dist. LEXIS 203959, at *22 (S.D. Tx. Oct. 16, 2025).[2]

---

[2] Despite Respondent's position that indefinite detention should be viewed in terms of years rather than months, all the above cases granted habeas relief to immigrants who were detained for shorter periods than the 10-plus months Thabateh has been in custody to date here. *See generally Perez*, 2025 U.S. Dist. LEXIS 249980 (roughly

Following this authority, the Court concludes here that Thabateh provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  This is because immigration officials were previously unable to remove Thabateh in 2023 and—most importantly—during his more recent detention, officials again failed to effectuate removal, this time apparently because of the lack of proper travel documentation/approval.  Ultimately, it is reasonable given these circumstances that Thabateh's lack of a currently-valid Israeli passport, in conjunction with continuing conflict in the region, present barriers that have prevented removal already and bar removal over the reasonably foreseeable future.

The Court now turns to whether Respondent provides sufficient evidence to rebut this showing.  In this respect, critical facts are Suriano's declarations that (1) "Israel would accept Palestinians without Travel Documents via charter flights," (ECF No. 9-9, PageID.140), and (2) Thabateh "now has all his proper travel documents required to return to Israel with the next international charter," (ECF No. 18-1, PageID.202).

This evidence does exceed what the aforementioned cases deemed insufficient to meet the government's burden under this issue. *See Masheli*, 2026 U.S. Dist.

---

seven months in custody); *Kai Yu*, 2026 U.S. Dist. LEXIS 26419 (eight months); *Masheli*, 2026 U.S. Dist. LEXIS 12007 (seven months); *Tarkhorani*, 2026 U.S. Dist. LEXIS 29525 (eight months); *Abuelhawa*, 2025 U.S. Dist. LEXIS 203959 (four months).

10

LEXIS 12007 at *9-10 (the respondents failed to refute the petitioner's showing because "Respondents' sole evidence is the assertion that a travel document has been requested more than five months ago and that there is a 'significant likelihood of removal in the reasonably foreseeable future'") (citation omitted); *Tarkhorani*, 2026 U.S. Dist. LEXIS 29525 at *7 (the respondents failed to refute the petitioner's showing because "[t]here is nothing before the Court to suggest that the Iranian government is expected to issue travel documents to Petitioner in the near future . . . [, or] that the process of removal to a third country will be resolved [soon]"); *Kai Yu*, 2026 U.S. Dist. LEXIS 26419 at * 7 (the respondents failed to refute the petitioner's showing because (1) "Respondents' sole evidence is the assertion that after the failed attempt to remove Petitioner . . . , 'ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy'"; (2) "Respondents do not indicate that they have received anything from the Chinese Embassy as of the date they filed their response"; and (3) "Respondents acknowledge that the process 'historically can be prolonged'") (citations omitted); *see also Perez*, 2025 U.S. Dist. LEXIS 249980 at *4 (the respondents essentially "fail[ed] to offer any rebuttal evidence"); *Abuelhawa*, 2025 U.S. Dist. LEXIS 203959 at *24 ("the Government fails to meet its burden where it provides only conclusory statements as to the likelihood of removal").

In contrast to these cases, Suriano here specifically states that Thabateh now has the necessary travel documents for removal on the next charter flight. This case is complicated, however, by the nature of the travel documents at issue, as well as recently-escalated and ongoing conflict in the Middle East. Indeed, Thabateh argues that Suriano's statement is misleading at best, and that that no specific travel document(s) supporting his removal to Israel has been provided.

At the hearing, counsel for Respondent stated that what constitutes a travel document varies from case to case. This could be a passport or other physical document, but here—given that Israel is generally accepting the removal of Palestinians via charter flight—"travel documents" merely refer to Israel's approval to receive the specific individuals placed on a particular flight. And this would be affirmatively shown via a flight manifest or other materials that have yet to be prepared or produced for future flights. Respondent's counsel also emphasized that the failure to date in accomplishing removal since Thabateh was taken into custody is due to normal, expected procedural and bureaucratic delays in the deportation process rather than any concrete barrier preventing removal altogether or in the near future.

However, Respondent's most recent update states that immigration officials "have not been able to schedule a flight to remove petitioner due to ongoing turmoil in the region of his removal." (ECF No. 21, PageID.214). Thus, the regional conflict

currently prevents Thabateh's removal regardless of whether the necessary travel documents have been obtained.  And this is the same essential barrier that prevented Thabateh's removal as early as 2023.  It is also telling that Respondent earlier represented that Thabateh would be removed by the end of January 2026.  The next month, Suriano stated that immigration officials were prepared to remove Thabateh on the next charter flight as early as March 2026.  Despite these repeated assertions of imminent removal, Thabateh remains in custody, and Respondent now says Thabateh will be removed only when it is safe to do so, with no indication of when this is anticipated.

Under these circumstances, the Court concludes that the ongoing conflict constitutes a concrete barrier to Thabateh's imminent removal and, therefore, there is no significant likelihood of removal in the reasonably foreseeable future.  This is especially so given the repeated failures to remove Thabateh to date, as well as the lack of any concrete progress toward removal since essentially January 2026, even before conflict in the Middle East escalated.  In sum, this case is sufficiently analogous to the aforementioned cases granting habeas relief, and the Court will do the same here.  The Court also notes that Thabateh has no recent criminal history, and he was properly reporting to immigration officials during his supervised release from 2023 to 2025.

Because Thabateh's continued detention is unlawful, the Court must grant the habeas petition and direct Respondent to release Thabateh from custody. *See Zadvydas*, 533 U.S. at 699-700 ("if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Thabateh's release, though, will not be unconditional.

In *Zadvydas*, the Supreme Court acknowledged that in the event a district court orders the noncitizen's release from custody, the "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* The INA and its implementing regulations provide the requisite guidance for imposing appropriate release conditions on noncitizens who are awaiting removal. *See* 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.4(j). The statute mandates, among other things, that released noncitizens "obey reasonable written restrictions on [their] conduct or activities" that the Homeland Security Secretary "prescribes for [them]." 8 U.S.C. § 1231(a)(3)(D).

Since there is no principled reason to depart from the current statutory and regulatory framework for imposing release conditions on noncitizens who are awaiting removal, the Court will direct Respondent to release Thabateh from custody, subject to the release conditions the Homeland Security Secretary deems appropriate under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4(j).

\* \* \*

14

For the reasons given, the Court ORDERS that the habeas petition (ECF No. 4) is GRANTED.

IT IS FURTHER ORDERED that Respondent is directed to release Thabateh from custody, under reasonable conditions of supervision, no later than Tuesday, April 28, 2026.

IT IS FURTHER ORDERED that that the release conditions must adhere to the guidelines specified in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4(j).

IT IS FURTHER ORDERED that Respondent must file a status report with the Court no later than Friday, May 1, 2026, verifying his compliance with this opinion and order.

Dated: April 24, 2026                          s/Robert J. White
                                               Robert J. White
                                               United States District Judge

15